IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARY M. GRAFF,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 06-137-MJR** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to United States District

Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

In accordance with **42 U.S.C. § 405(g)**, plaintiff Mary M. Graff seeks judicial review of

the final agency decision finding that she is not disabled and denying her Supplemental Security

Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

### Procedural History

Plaintiff filed an application for SSI on May 14, 2003, alleging disability beginning on

April 30, 2003.  (Tr. 49-51).

The application was denied initially and on reconsideration and, at plaintiff's request, a

hearing was held before Administrative Law Judge (ALJ) Scott T. Miller on May 16, 2005.  (Tr.

322-349).   ALJ Miller denied the application for benefits in a decision dated July 1,  2005.  (Tr.

---

[1]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found
at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to
SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  For all intents and
purposes relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. §
416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404,
Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of
convenience.

17-24).  Plaintiff's request for review was denied by the Appeals Council, and the July 1, 2005, decision became the final agency decision.   (Tr. 4-6).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff raises only one issue.  She argues that the ALJ's decision was not supported by substantial evidence because the ALJ failed to incorporate into his residual functional capacity findings the "B criteria" found by the state agency physicians.

## The Evidentiary Record

The court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record, focusing on the evidence most relevant to the issue raised by plaintiff.

Plaintiff claims both physical and mental impairments.  The issue that she raises has to do with her mental residual functional capacity.  Therefore, the review of the evidence will focus on that issue.

**1.**     **Earnings Records**

Plaintiff has no past relevant work.  She had no earnings from the year 1992 to the present.  (Tr. 52).

**2.**     **Plaintiff's Testimony**

Plaintiff was represented at the hearing by attorney Patrick Prendergast.  (Tr. 324).

Mary M. Graff was 47 years old at the time of the hearing.  She was 5'9" tall, and weighed 143 pounds.  (Tr. 327).  She was not married and  lived with her fourteen year old child.  (Tr.328).   She has 14 years of education.  (Tr. 328).

Plaintiff testified that she has suffered from fibromyalgia since 1990 and has basically not

-2-

worked since then.  She also testified that her children were "spaced out far, so I was at home a lot."  (Tr. 326).  She home schooled her children up until 3 years before the hearing.  (Tr. 339).

Her fibromyalgia causes her pain every day, from the top of her head to her toes.  She also has confusion, fatigue, visual problems, and difficulty sleeping.  (Tr. 329).  She is also depressed, and had been taking Lexapro for about a year.  (Tr. 331).  She has not really been diagnosed with depression, but had been told that she was depressed because of the fibromyalgia.  (Tr. 342).

Plaintiff does household chores, with some help from her 18 year old daughter.  (Tr. 332).  She is able to drive a car.  She testified that she can stand for only 10 or 15 minutes.  (Tr. 335).  She can sit for about a half hour.  (Tr. 339).  She can walk only half a block.  (Tr. 344).

**3.      Testimony of Vocational Expert**

John Grenfell testified as a vocational expert.  His c.v. is at Tr. 40.   Plaintiff voiced no objections to his qualifications.  (Tr. 347-348).

The ALJ asked the VE to assume a person of plaintiff's age, education, vocational history, who was able to do unskilled light work.  The VE testified that such a person could perform the following work: office helper (30,000 jobs), cashier (68,000 jobs), and mail clerk (4,200 jobs), and copy machine operator (2,000 jobs).   A second hypothetical which assumed more limitations drew the opinion that there are significant numbers of unskilled sedentary jobs that the person could do. (Tr. 345-346).

The VE also opined that, if he were to assume that Ms. Graff's testimony were completely credible, she would not be able to engage in any sustained work activity.  (Tr. 346-347).

On cross examination, plaintiff's counsel asked the VE to assume the B criteria items found by the state agency examiners, that is, moderate restriction of activities of daily living,

moderate difficulties in maintaining social functioning, moderate difficulty in maintaining concentration, pace, or persistence, and one or two episodes of decompensation.  Plaintiff's counsel asked "If you combined all of those limitations, not taking each one separately, what impact would that have on the unskilled jobs you've identified?" (Tr. 347).  The VE responded that "that's essentially a psychological question."  He went on to state that "it would appear that those kinds of limitations ... would not allow her to engage in sustained work activity." (Tr. 347-348).

**4.    Medical Records**

Plaintiff was diagnosed with fibromyalgia at the Mayo Clinic in 1994.  (Tr. 214).  Her alleged onset of disability is April 30, 2003.  She was treated by Dr. Kurt Martin in the Carbondale Clinic beginning in January, 2002, for a number of conditions.  (Tr. 134-175).  The first note indicates that she was going through a divorce and "times are very difficult for her." (Tr. 175).  She underwent an exploratory laparoscopy for possible endometriosis in January, 2002.  She had some difficulty thereafter due to the fact that she went four-wheeling later that day and she was hiking and carrying heavy groceries in the next couple of weeks.  (Tr. 172-174).  In November, 2002, she complained of increased pain in her joints; the impression was that her fibromyalgia was getting worse.  She was placed on Ultram and Celebrex.  (Tr. 159).  She was in an accident while riding in a 4x4 vehicle in March, 2003, and was assessed with diffuse pain after jarring, jolting injury.  (Tr. 151).  An MRI of her lumbar spine showed spondylosis of L5-S1, which was not significantly different from a previous study done in 2001.  (Tr. 148).  MRI of her cervical spine showed some mild bulging discs.  (Tr. 145-147).  She was seen again for back pain in September, 2003, after she hurt her back on a trampoline.  (Tr. 141).  This was diagnosed as low back strain and physical therapy was recommended.  (Tr. 134).

Ms. Graff was treated by other health providers for fibromyalgia, anxiety, and inability to

-4-

sleep during the relevant time period.  (Tr. 177-201; 225-264).  She has been prescribed various medications including Ativan, Lexapro, and Restoril.

The records contain a letter dated January 13, 2004, from Julie O'Donnell, L.C.P.C., at Alternative Counseling Services.  (Tr. 210-11).  She saw plaintiff on August 21, 2000.  There is no indication that she saw plaintiff again.  She stated that Ms. Graff was home schooling 2 of her 4 children, and was going through a divorce.  She reported being depressed with inability to sleep, difficulty concentrating, fatigue and feelings of worthlessness.  Ms. Graff also told the counselor that her husband was the main financial support of the family and she was "fearful of what financially a divorce would do to her and her children."  (Tr. 211).

**5.**   **State agency physicians assessments**

On December 5, 2002, state agency examiners  Jack Musgrave, M.S., and James Bordieri, Ph.D., saw plaintiff.  (Tr. 123-30).  Plaintiff  stated that was she was depressed due to her fibromyalgia (Tr. 125).  She was taking Ativan, which is used to relieve anxiety, but was not under psychiatric care  (Tr. 125).  The examiners diagnosed chronic adjustment disorder with depressed mood. They suggested further counseling or a fibromyalgia support group.  (Tr. 130).

A second consultative psychological examination was performed by James Whisenhunt, PhD, on August 8, 2003.  Dr. Whisenhunt did a  mental status examination which showed her affect and mood were congruent with some tearfulness at times.  She was not psychotic, her speech was relevant and coherent, her thinking was logical, there was no pressure of speech or looseness of association, and she did not have hallucinations or delusions.  She reported that she had suicidal ideations but no attempts.  He described  her judgment as appropriate, and concluded that her long term memory was essentially intact, her immediate recall was in the low average range, and she could not perform serial sevens, but she correctly mentally solved 15 simple math problems.  (Tr. 133).  Dr. Whisenhunt diagnosed chronic, mild to moderate

adjustment disorder with mixed anxiety and depressed mood (Tr. 133).

On September 23, 2003, a state agency psychologist reviewed the record and concluded that Ms. Graff was mentally able to perform simple one-two step work tasks with a moderate limitation of social expectations. (Tr. 103-05). A second state agency psychologist reviewed the record and concurred with this opinion. (Tr. 105).

### Applicable Standards

To qualify for disability insurance benefits, a claimant must be "disabled." "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See, *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show

that there are a significant number of jobs in the economy that claimant is capable of performing. **See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7ᵗʰ Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**   Thus, the Court must determine not whether plaintiff is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See, *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).**  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).**   In analyzing the ALJ's decision for "fatal gaps or contradictions," the Court "give[s] the opinion a commonsensical reading rather than nitpicking at it. ***Johnson v. Apfel*, 189 F.3d 561, 564 (7ᵗʰ Cir. 1999)**.

## Analysis

The ALJ properly followed the five-step inquiry.  He found that plaintiff has severe impairments, but that her impairments do not meet or exceed a listed impairment.  He went on to consider her residual functional capacity, and found that she has the capacity to perform a range of light unskilled work.  (Tr. 24).

The only issue raised by plaintiff is that the ALJ erred in his consideration of the B criteria findings.  Plaintiff has not raised any issue with regard to the ALJ's credibility findings or with regard to the physical functional capacity findings.

Plaintiff's point is predicated upon a misunderstanding of the role of the B criteria. The B criteria come into play in assessing whether a claimant is presumptively disabled, i.e., whether she meets the criteria for a listed impairment.  Thus, the B criteria are relevant at steps 2 and 3 of the five step analysis.  They are not, however, relevant to the determination of residual functional capacity at step 5.  SSR 96-8p.  If the claimant's condition does not meet the criteria of a listed impairment, the claimant's mental RFC must be determined.  "RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments.  An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders...."  20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00(A).

To be presumptively disabled under listing 12.04, affective disorders, or under listing 12.06, anxiety related disorders,  two of the following must be present:

(1)  *marked* restriction of activities of daily living;

(2)  *marked* difficulties in maintaining social functioning;

(3) *marked* difficulties in concentration, persistence, or pace; or

(4) repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06. [emphasis added.]

The state agency examiners found that plaintiff had *moderate*, i.e., not marked, difficulties in categories 1 though 3, and only 1 or 2 episodes of decompensation.  (Tr. 117). Thus, the ALJ properly found that her condition does not meet or exceed the criteria of a listed disorder, and she is not presumptively disabled.   (Tr. 19).

SSR96-8p directs that "The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF [Psychiatric Review Technique Form]."  SSR96-8p, p.5.

Here, the ALJ went on to make the required detailed functional assessment.  In assessing plaintiff's mental functional capacity, the ALJ gave substantial weight to the opinions of the state agency examiners concerning plaintiff's limitations and functional capacity.  (Tr. 21).  This is in accordance with 20 C.F.R. § 404.1527(f)(2)(i), which directs the  ALJ to consider opinions of state agency physicians and psychologists, who are experts in the Social Security program.

The ALJ properly considered the state agency psychologists' opinion that Ms. Graff could mentally perform simple one-two step work tasks with a moderate limitation of social expectations  (Tr. 105).  This opinion was based on their findings that plaintiff carried out a fair set of daily activities with some limitation secondary to her general medical condition, she performed reasonably well on cognitive tasks, her adaptive skills were within normal limits, and her interpersonal skills were appropriate during clinical interviews (Tr. 105).  He also considered plaintiff's testimony, the notes of her treating physician, and the range of her activities.  He noted that she reported to her physician the following activities: bouncing on a trampoline, hiking, and four-wheeling.  (Tr. 21-22).

Based on her residual functional capacity, the ALJ found that Ms. Graff is limited to unskilled work.  "Unskilled work is work which needs little or no judgment to do simple duties

that can be learned on the job in a short period of time." 20 C.F.R. 404.1568(a). The finding that she is limited to unskilled work accommodates the findings that she is limited to simple one-two step work tasks with a moderate limitation of social expectations. Unskilled work involves "dealing primarily with objects, rather than with data or people." SSR85-15, p. 4.

Plaintiff suggests that the B criteria findings should have been included in the hypothetical questions posed to the vocational expert at the hearing. This is incorrect. A hypothetical question must include the residual functional capacity findings supported by the evidence. As is explained above the B criteria are distinct from residual functional capacity findings.

The vocational expert is not a medical expert, and his function is not to draw medical conclusions. Including the B criteria findings in the hypothetical asks him to do just that. When plaintiff's counsel asked him to assume the B criteria findings of the state agency examiners, the VE replied that "My problem is, I think that's essentially a psychological question." (Tr. 347).

For the reasons stated above, the court rejects plaintiff's only point raised. After careful review of the record and of the briefs of the parties, this court is convinced that no errors of law were made. While reasonable minds might differ as to whether Ms. Graff is disabled within the meaning of the relevant standards, the ALJ's decision is supported by substantial evidence in the record. **See, *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

.
## <u>Recommendation</u>

For the aforesaid reasons, this court recommends that the final decision of the Commissioner of Social Security finding that plaintiff Mary M. Graff Glenn is not disabled, and therefore not entitled to Supplemental Security Income, be **AFFIRMED**.

Objections to this report and recommendation must be filed on or before March 12, 2006.

**Submitted: February 21, 2007**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**